TROUTMAN PEPPER LOCKE LLP
Chad Fuller (SBN 190830)
chad.fuller@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:  858.509.6000
Facsimile:   858.509.6040

TROUTMAN PEPPER LOCKE LLP
Jessamyn E. Vedro, Bar No. 280209
jessamyn.vedro@troutman.com
350 South Grand Ave, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800

*Attorneys for Defendants*
*Optum Health Plan of California and*
*Monarch Healthcare, A Medical Group,*
*Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISETH AGUIRRE,<br><br>                    Plaintiff,<br><br>        vs.<br><br>OPTUM HEALTH PLAN OF CALIFORNIA, ET AL.,<br><br>                    Defendants. | Case No. 5:25-cv-01161-JGB (SPx)<br><br>(Assigned to Hon. Jesus G. Bernal)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:        August 18, 2025<br>Time:        9:00 a.m.<br>Judge:       Jesus G. Bernal<br>Place:       Riverside<br>             Courtroom 1<br><br>Action Filed:   May 12, 2025 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

RELEVANT ALLEGATIONS ................................................................................3

LEGAL STANDARD .............................................................................................4

ARGUMENT...........................................................................................................5

    A.    Congress Enacted the TCPA to Address Telemarketing Concerns, Not to Prevent Legitimate Companies from Transmitting Necessary Health Care Information to Customers.........6

    B.    Calls that Relate to the Health and Safety of a Consumer Qualify for the Emergency Purpose Exception....................................................7

        1.    The emergency purpose exception covers prior authorization approval calls.....................................................7

        2.    The fact that the calls reached a "wrong number" recipient does not make a difference to the Emergency Purpose analysis....................................................................................10

CONCLUSION.......................................................................................................12

TROUTMAN PEPPER LOCKE LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................................4

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990)...........................................................................5

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................5

*Dennis v. Amerigroup Washington, Inc.*,
    No. 3:19-cv-05165, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020)................11

*Gabertan v. Walmart, Inc.*,
    523 F. Supp. 3d 1254 (W.D. Wash. 2021) ......................................................7

*Lindenbaum v. CVS Health Corp.*,
    No. 1:17-CV-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018).......8, 9, 10, 11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    145 S. Ct. 2006 (2025)....................................................................................7

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009)...........................................................................5

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ...........................................................................4

*Papasan v. Allain*,
    478 U.S. 265 (1986) .........................................................................................5

*Roberts v. Medco Health Sols., Inc.*,
    No. 4:15-cv-1368, 2016 WL 3997071 (E.D. Mo. July 26, 2016).............8, 9, 12

*In the Matter of Rules & Regulations Implementing the Tel. Consumer
    Prot. Act of 1991*,
    CC Docket No. 92-90, 7 F.C.C. Rcd. 8752 (1992) ...........................................11

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   CG Docket No. 02-278, 31 F.C.C. Rcd. 9054 (2016) ........................................ 11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .............................................................. 5

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .............................................................. 5

*In the Matter of the Tel. Consumer Prot. Act of 1991*,
   7 FCC Rcd. at 2738 ........................................................................ 8

*In the Matter of the Tel. Consumer Prot. Act of 1991*,
   CC Docket No. 92-90, 7 F.C.C. Rcd. 2736 (1992) ............................................ 7

**Statutes**

47 U.S.C. § 227(b)(1)(iii) ...................................................................... 6, 7

47 U.S.C. § 227(b)(1)(A) ...................................................................... 2

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................. 4

Pub. Law 102–243, 105 Stat 2394, §2 (12) ...................................................... 8

TCPA .............................................................. 1, 2, 4, 6, 7, 8, 9, 10, 11, 12

**Other Authorities**

47 C.F.R. § 64.1200 ............................................................................ 12

Fed. R. Civ. P. 15 ............................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 3, 4

L.R. 11-6.1 ................................................................................... 14

L.R. 15 ....................................................................................... 1

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

TABLE OF AUTHORITIES

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Optum Health Plan of California, Inc. ("Defendant"),[1] by counsel, submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Complaint ("Complaint") for Failure to State a Claim. In support thereof, Defendant states as follows.

## INTRODUCTION

Not every telephone call is made for an emergency purpose. But a call made to a patient from a health care organization seeking to confirm a doctor's request for prior authorization approval of medical treatment is uniquely important, as the patient's access to vitally necessary medical attention may quite literally depend on that call. And the animating emergency purpose behind that call remains the same even if the call happens to reach a different person.

Unlike the typical, run-of-the-mill Telephone Consumer Protection Act ("TCPA") case, this case does not involve a debt collector trying to enforce a debt or a telemarketer peddling unwanted services. To the contrary, Defendant Monarch Healthcare, A Medical Group, Inc. ("Monarch") is a healthcare delivery organization which operates within the broader Optum network and provides and arranges for medical services for enrollees in various health insurance plans contracted with Optum affiliated entities. All the calls at issue in this lawsuit were placed for an emergency purpose. As evidenced by the text of the calls excerpted in the Complaint,

---

[1] Although Plaintiff's original Complaint names Optum Health Plan of California as the defendant, the calls at issue were placed to a phone number associated with the enrollee of an affiliate, Monarch HealthCare, A Medical Group, Inc. ("Monarch"). For the limited purposes of this pleadings-stage Motion, Optum and Monarch are treated collectively as "Defendant." Plaintiff recently filed a First Amended Complaint addressing this misnamed Defendant issue, while also adding several other new allegations. (ECF No. 25.) While Defendant consents to the replacement of Monarch as the correct named Defendant, that filing was procedurally improper, as Fed. R. Civ. P. 15, Local Rule 15, and this Court's Standing Order each required Plaintiff to file a motion or stipulation to amend. Nonetheless, out of an abundance of caution, Defendant addresses the allegations in both complaints, neither of which state a claim upon which relief may be granted, as explained in this Motion.

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

the calls were specifically placed for the purpose of confirming a doctor's requests for insurance pre-authorization for an enrollee's medical treatment.

In other words, these are not the dreaded telemarketing "robocalls" that harass consumers. These calls are a necessary effort to get in touch with Defendant's enrollees, and the Federal Communications Commission ("FCC") and many courts have already recognized that calls of this exact type are not subject to liability under the TCPA.

Importantly, Defendant obtains the consent required by the TCPA to place calls to its enrollees. The Complaint filed by Plaintiff Liseth Aguirre ("Aguirre") does not dispute this fact. Instead, the Complaint alleges a "wrong number" scenario. Plaintiff is allegedly not an enrollee of Defendant; instead, she is the subscriber of a cell phone number that once belonged to an enrollee. As a result, she alleges Defendant placed calls to that number that were intended to reach the enrollee, but instead reached Plaintiff. Plaintiff claims these "wrong number" calls violated the TCPA because although Defendant had consent from its enrollee, it did not have her consent to place the calls to her reassigned cell phone number.

But plaintiff has no viable TCPA claim under those alleged facts. The TCPA provision Plaintiff invokes expressly does not apply to "a call made for emergency purposes." 47 U.S.C. § 227(b)(1)(A). All the calls allegedly placed to Plaintiff's phone number were "made for emergency purposes." Specifically, these calls were made for the purpose of confirming a doctor's request for pre-authorization of insurance coverage for upcoming medical treatment. It is necessary for Defendant to make these types of calls to its enrollees so that those enrollees can obtain access to vital treatment directly related to their health and wellbeing. These are the exact type of emergency purpose calls that Congress explicitly exempted from the TCPA's scope.

Plaintiff seeks to transform these emergent health-care message calls placed to her reassigned number into a multi-million-dollar class-action lawsuit. But the law

Troutman Pepper Locke LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130

1    does not allow her to collect a windfall for having inherited a phone number from
2    Defendant's enrollee, especially not where every single alleged call was made for an
3    emergency purpose.

4    For these reasons, Defendant respectfully requests that the Court dismiss
5    Plaintiff's claims with prejudice.

6    ## **RELEVANT ALLEGATIONS**

7    Defendant Monarch Healthcare, a Medical Group, Inc. ("Monarch") is a
8    healthcare delivery organization that provides or arranges for covered services
9    directly to patients.  Monarch is also part of a network of employed and contracted
10   providers that facilitate care to enrollees of various health insurance plans. The
11   network affiliated entities contract with and provide access to hospitals, physicians,
12   urgent care centers, ancillary services, and the like.  Monarch collaborates and
13   coordinates with its network providers to ensure high quality care and service for its
14   assigned patients.

15   Plaintiff alleges[2] she has been the subscriber to the cellular telephone number
16   (951) XXX-3726 since at least March 2024.  Compl. ¶ 8; First Am. Compl. ¶ 8.  She
17   alleges that Defendant placed calls to this number beginning in March 2024 intending
18   to reach a recipient other than Plaintiff. *Id.* ¶ 10.  She specifically alleges she received
19   seven calls on March 11, March 12, July 31, August 1, and August 6, 2024.  Compl.
20   ¶¶ 12-18; First Am. Compl. ¶¶ 12-18.  She alleges each of these calls delivered a
21   prerecorded voice message and includes excerpts of the content of each of the seven
22   calls in her Complaint.  Compl. ¶¶ 12-18; First Am. Compl. ¶¶ 12-18.

23   The excerpted content of the calls included in Plaintiff's Complaint make clear
24   that the calls were placed for the purpose of contacting Defendant's enrollee to

25

26

27

28   [2] For the purposes of this Rule 12(b)(6) motion only, Defendant accepts any well-pleaded allegations in Plaintiff's Complaint as true.

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

confirm prior authorization for medical treatments requested by the enrollee's physician. For instance, Plaintiff alleges a March 11, 2024 call that stated as follows:

> Hello, this is Optum calling for James Duran. We were calling to share information about an approved authorization. Please call us back any time twenty-four hours a day . . . .

Compl. ¶ 12. Similarly, Plaintiff alleges a March 12, 2024 call that stated:

> Hello, this is Optum calling for James Duran. We were trying to reach you again to share some important information about a request your doctor made. . . .

*Id.* ¶ 14. Similar language was used in each of the other calls alleged, each indicating Defendant was trying to reach a James Duran or a Jonathan Duran regarding an approved authorization. *See id.* ¶¶ 12-18.

Plaintiff does not allege she ever answered these calls, ever made a request to Defendant not to call her, or ever informed Defendant that she was not the enrollee which Defendant was trying to reach or that the number had been reassigned to her. *See generally id.* ¶¶ 10-41; First Am. Compl. ¶¶ 10-53.

Based on these allegations, Plaintiff asserts a single count against Defendant for violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), on behalf of herself and a putative class. Compl. ¶¶ 42, 70-72; First Am. Compl. ¶¶ 54, 82-87

## **LEGAL STANDARD**

Courts must dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950. In

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

addition, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When ruling on a 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). But the Court need not accept unreasonable inferences, or "conclusory, unwarranted deductions of fact" cast in the form of factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## **ARGUMENT**

Plaintiff fails to state any claim upon which relief can be granted. The emergency calls at issue in this case were made for the purpose of seeking and/or providing health and safety information related to important medical treatments to people in need of such medical treatment.

Defendant does not suggest that every call from a health care provider qualifies for the emergency purpose exception. Instead, whether the call qualifies for the exception is determined by the content of the call. Plaintiff's own allegations in her Complaint show that the content of all the alleged calls placed to Plaintiff's telephone number were specifically intended to provide vital health information related to prior

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

authorization approvals for coverage of upcoming medical treatments to be provided to Defendant's enrollee.  Those calls were plainly made for emergency purposes, and thus are not subject to the TCPA.

> **A.      Congress Enacted the TCPA to Address Telemarketing Concerns, Not to Prevent Legitimate Companies from Transmitting Necessary Health Care Information to Customers.**

When Congress enacted the TCPA in 1991, telemarketers were its target.  Beset with complaints that consumers' days and nights were repeatedly interrupted by uninvited telephone calls or faxes from companies with which they had no prior relationship, Congress sought to restrict "certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment."  H.R. Rep. No. 102-317, at 5 (1991).

Randomly and sequentially dialed numbers were the original focus of the TCPA.  Even having an unlisted telephone number did not shield consumers from attack, as telemarketers used telephone equipment that randomly dialed telephone numbers—*any* telephone number—regardless of whether the telemarketer had an existing relationship with the consumer.  *See* H.R. Rep. 102-317, at 9–10 (taking issue with indiscriminate calling practices in which "[t]elemarketers often program their systems to dial sequential blocks of telephone numbers, which have included . . . unlisted telephone numbers.").

As a result, Congress enacted a statute that prohibited making a call "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(iii).  This effort to tackle the tactics employed by telemarketers was not a blanket prohibition on calling, however.  Congress recognized that certain calls were important, and for that reason included an "emergency purpose" exemption to allow certain automated calls as a means of communicating information regarding health or safety.  Calls that fall under the emergency exception are not subject to the

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

TCPA's restrictions, nor do they require consent of the "called party." *Id.* Simply put, if the purpose of the call concerns the health and safety of a consumer, the TCPA does not apply pursuant to the emergency purpose exception. *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1258 (W.D. Wash. 2021) (recognizing the term "emergency purpose" has been interpreted to encompass "calls made necessary in any situation affecting the health and safety of consumers").

**B.    Calls that Relate to the Health and Safety of a Consumer Qualify for the Emergency Purpose Exception.**

Not all calls related to healthcare, of course, qualify for the emergency purpose exception to the TCPA, and Defendant does not contend as much. Prior authorization approval calls—like all the calls alleged in the Complaint—are a unique type of healthcare-related call on which a patient's ability to obtain treatment necessary for their health and wellbeing directly depends, and thus easily fall within the ambit of the emergency purpose exception.

**1.    The emergency purpose exception covers prior authorization approval calls.**

The FCC has long recognized that the emergency purpose exception to the TCPA must be interpreted broadly. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, CC Docket No. 92-90, 7 F.C.C. Rcd. 2736 (1992) ("The legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly.").[3]    Because Congressional findings show that "emergency" was intended to cover all "situations affecting the health and safety" of consumer, the FCC has interpreted "emergency" "to include situations in which it is

---

[3] Under the TCPA, the FCC is delegated authority to prescribe regulations to implement the TCPA's requirements. *Id.* at § 227(b)(2). Although the FCC's statutory interpretation may not be technically binding on this Court, it is still highly persuasive, and this Court must "afford[] appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025).

DEFENDANTS' MOTION TO DISMISS

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

in the public interest to convey information to consumers concerning health or safety, whether or not the event was anticipated or could have been anticipated." *In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. at 2738 (citing Pub. Law 102–243, 105 Stat 2394, §2 (12)).

In light of the broad scope of the emergency purpose exception and Congress's intent to cover calls relating to situations that affect the "health and safety" of a consumer, multiple courts have easily held that calls providing consumers with information about medication or medical treatments "fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers'" even where each individual call may not directly pertain to a life threatening or conventionally emergent situation. *Roberts v. Medco Health Sols., Inc.*, No. 4:15-cv-1368, 2016 WL 3997071, at *3 (E.D. Mo. July 26, 2016).

For instance, in *Roberts*, the court concluded that wrong-number calls made by a pharmacy benefit manager company attempting to contact consumers regarding prescription medications orders were fully covered by the emergency purpose exception, and thus the plaintiff's TCPA claims with respect to those calls failed. *Id.* at *2-3. The court reached this conclusion recognizing that "in many instances a patient's ability to timely receive a prescribed medicine is critical in preventing a major health emergency," and thus calls "involving an attempt to confirm or refill a prescription order, schedule a prescription delivery, or confirm that a prescription is on its way" are made for an emergency purpose. *Id.* at *3. Similarly, in *Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018), the court granted judgment on the pleadings after it held that prescription reminder calls made by a pharmacy to the wrong telephone number were exempted from the TCPA because the calls were made for an emergency purpose. The court recognized that "[i]n most cases, information about where, when, and how to refill a prescription concerns the health and safety of consumers, who may be reliant on their medication." *Id.*

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

The calls alleged in this case are equally necessary and emergent as the prescription-related calls in *Roberts* and *Lindenbaum*, if not more so. As made clear from the excerpted text of the calls contained in the Complaint, the purpose of the calls was to reach Defendants' enrollees to confirm prior authorization approval for coverage of medical treatment at the request of the enrollee's physician. *See* Compl. ¶¶ 12, 15, 17; First Am. Compl. ¶¶ 12, 15, 17. Like calls related to prescription medication, a call seeking to confirm physician-requested approval for medical treatment plainly "concerns the health and safety of consumers, who may be reliant on" that treatment. *Lindenbaum*, 2018 WL 501307, at *2. And, as with pharmaceutical prescriptions, "in many instances a patient's ability to timely receive [medical treatment] is critical in preventing a major health emergency." *Roberts*, 2016 WL 3997071, at *3.

Implicitly acknowledging that the Emergency Purpose exception is highly relevant to this case, Plaintiff has attempted in her First Amended Complaint to get around this problem by alleging that (1) the voice messages left on her phone when she did not answer the calls did not "advise[]" her that they were "exigent in nature" or inform her of any "significant risk" to her health and safety (First Am. Compl. ¶¶ 38, 44), (2) the voice messages did not contain certain specific types of health information (*id.* ¶¶ 39-43), and (3) the phone calls at issue "occurred over at least five months which evidences that there was no emergent nature to the messages (*id.* ¶ 47). Plaintiff's allegations focused on the content of the voice messages left on her phone when she failed to answer the call, however, fail to address the relevant issue, which is whether Defendant's objective *purpose* in making the calls was an emergent one. As demonstrated by Plaintiff's own allegations, Defendant's purpose for each of the calls at issue was to confirm prior authorization approval for coverage of medical treatment at the request of the enrollee's physician, which directly relates to the health and safety of the enrollee Defendant was intending to reach. And, with regard to the alleged time frame of the calls occurring "over at least five months," Plaintiff ignores

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

the fact that three of the alleged calls to "James Duran" occurred over the course of just two days (March 11-12, 2024) (*id.* ¶¶ 12-14); the remaining three alleged calls to "James Duran" occurred over just two days (July 31-August 1, 2024) (*id.* ¶¶ 15-17); and the final alleged call was placed just five days later (August 6, 2024) to reach a different consumer, "Jonathan Duran" (*id.* ¶ 18). Contrary to Plaintiff's "five month" claim, the actual timing of the alleged calls *supports* the emergent nature of the calls. Plaintiff's attempted preemptive allegations against the Emergency Purpose exception are thus meritless.

Because the alleged calls all fall within the ambit of the Emergency Purpose exception, Plaintiff cannot state a viable claim, and her TCPA claim should be dismissed with prejudice. *See Lindenbaum*, 2018 WL 501307, at *3 (granting Rule 12(c) motion because TCPA claims were "exempt from liability" and dismissing claims with prejudice).

> ## 2. The fact that the calls reached a "wrong number" recipient does not make a difference to the Emergency Purpose analysis.

Plaintiff also makes much of the fact that she was not the intended recipient of Defendant's calls and did not have a relationship with Defendant "whereby Defendant would have a reason to contact Plaintiff in emergency or exigent circumstances." *See* Compl. ¶¶ 23-29; *see also* First Am. Compl. ¶¶ 26-32, 46. But that fact makes no difference to the application of the emergency purpose exception because the existence of an emergency purpose is an entirely objective inquiry that turns on the *caller's* purpose, not the *recipient's* circumstances.

The FCC has made clear that the application of the emergency purposes exception turns solely on an objective evaluation of the specific purpose of the call. So long as the purpose behind the call "potentially implicat[es] the health and safety" of the called party, that call falls within the exception. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

278, 31 F.C.C. Rcd. 9054, 9063 (2016) [hereinafter "2016 Order"]; *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CC Docket No. 92-90, 7 F.C.C. Rcd. 8752, 8778 (1992) ("Service outages and interruptions . . . could in many instances pose significant risks" and finding that even *potential* power interruptions fall within the emergency exception). Because the exemption depends on the objective purpose of the caller and not on the subjective needs or consent status of the person who receives the call, the exemption is not defeated even if the call reaches the wrong party. *Id.*

Courts have held the same. For example, in *Dennis v. Amerigroup Washington, Inc.*, No. 3:19-cv-05165, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020), the court held that certain calls which were objectively intended to provide important insurance coverage information to a member, but which unintentionally reached a non-member to whom the intended member's phone number had been unknowingly reassigned, were still exempt from TCPA liability under the emergency purpose exception. *Id.* at *1, 7 (noting "even wrong-number calls can qualify for the [emergency purpose] exemption").[4]

Similarly, in *Lindenbaum v. CVS Health Corp.*, No. 1:17-cv-1863, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018), the court held that pharmacy reminder calls made to a reassigned number fit within the broad emergency purpose exemption from TCPA liability. The court noted the plaintiff in that case "fail[ed] to allege any affirmative action she took to tell CVS that CVS was calling the wrong customer

---

[4] The Court in *Dennis* concluded that some of the calls made by the defendant for the purpose of asking healthcare screening questions or reminding the member about a new member ID card that had been mailed to them were not made for an emergency purpose, in contrast to other calls made for the purpose of informing members that their medical insurance coverage was in need of renewal to prevent coverage lapses, which were held to be emergency purpose calls. *Dennis*, 2010 WL 618472, at *6-7. By comparison, the calls at issue in this case—which sought to confirm preauthorization for medical treatment—are directly related to the health and safety of the consumer and therefore are analogous to the emergency purpose benefits retention calls in *Dennis*.

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

number" and instead "merely allege[d] that she never provided her 'prior express written consent' to Defendant to receive the calls." *Id.* And in *Roberts*, 2016 WL 3997071, at *3, the court granted the defendant's summary judgment motion where the "wrong number" calls at issue made for the purpose of notifying the intended recipient about the availability of prescription medication were found to qualify for the emergency purpose exception. The *Roberts* court interpreted the emergency purpose exception broadly to cover all the prescription notice calls, finding the calls relating to prescription medications "fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers'" even though the *actual* recipient of the calls was not the *intended* recipient who required the prescription medication. *Roberts*, 2016 WL 3997071, at *3.

Indeed, those cases and this case illustrates exactly why an emergency purpose exception exists, and why it cannot be limited to calls that reach the intended recipient. Unlike telemarketers, debt collectors, or other dreaded "robocaller" entities, a healthcare provider cannot simply cease contacting a member's phone number unless it is certain that the number is no longer associated with the intended recipient. The failure to contact a member may have serious and detrimental health consequences for that consumer. Under the broad interpretation of calls related to consumer "health and safety" as adopted by the FCC and courts alike, calls confirming prior authorization approval for physician-requested medical treatments easily fit within "any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200.

Plaintiff's attempt to eliminate the emergency purpose exemption for calls that unintentionally reach the wrong consumer is thus meritless.

## CONCLUSION

For the foregoing reasons, Defendant respectfully urges the Court to dismiss Plaintiff's Complaint with prejudice and grant all other such relief as the Court deems appropriate.

1    Dated:      July 21, 2025                    **TROUTMAN PEPPER LOCKE LLP**

2
                                                 _/s/ Jessamyn E. Vedro_
3                                                Chad Fuller
                                                 Jessamyn E. Vedro
4
                                                 *Attorneys for Defendants Optum Health*
5                                                *Plan of California and Defendant*
                                                 *Monarch Healthcare, A Medical*
6                                                *Group, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-
DEFENDANTS' MOTION TO DISMISS

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Optum Health Plan of California and

3 Monarch Healthcare, A Medical Group, Inc., certifies that this brief contains 4,024

4 words, which complies with the word limit of L.R. 11-6.1.

5            */s/ Jessamyn E. Vedro*

6            Jessamyn E. Vedro

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Troutman Pepper Locke LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130

DEFENDANTS' MOTION TO DISMISS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 21, 2025, the foregoing ***DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT*** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated:        July 21, 2025               **TROUTMAN PEPPER LOCKE LLP**

                                   */s/ Jessamyn E. Vedro*
                                   Chad Fuller
                                   Jessamyn E. Vedro

                                   *Attorneys for Defendants Optum Health Plan of California and Defendant Monarch Healthcare, A Medical Group, Inc.*