James L. Davidson*
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 550
Boca Raton, Florida 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and the
proposed class

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISETH AGUIRRE, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>MONARCH HEALTHCARE, A MEDICAL GROUP, INC.,<br><br>        Defendant. | Case No.: 5:25-cv-01161-JGB-SP<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Factual Background ..................................................................................................... 2

Legal Standard ............................................................................................................ 3

The Telephone Consumer Protection Act .................................................................. 3

Argument .................................................................................................................... 4

I.    Prerecorded messages that Defendant delivered to Ms. Aguirre's cellular
      telephone intended for someone other than Ms. Aguirre do not fall within the
      TCPA's "emergency purposes" exception .......................................................... 4

II.   Defendant's "emergency purposes" defense is not established through the
      allegations in the Amended Complaint. ............................................................ 7

      A.    Ms. Aguirre alleges with factual support that Defendant's calls were not
            placed for "emergency purposes." ........................................................... 7

      B.    This Court should reject Defendant's attempts to interject untested factual
            material that is not included within the four corners of the Amended
            Complaint. ............................................................................................... 11

III.  Even had Defendant established that all if its calls were to confirm prior
      authorization approval for coverage of medical treatment—it has not—the
      messages would not fall within the "emergency purposes" exception. ............. 12

IV.   Adopting Defendant's application of the "emergency purposes" exception
      would make the TCPA's healthcare message exemption superfluous. .............. 15

Conclusion ................................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. FCC*,
　　885 F.3d 687 (D.C. Cir. 2018)…………………………………………..15

*Alea London Ltd. v. Am. Home Servs., Inc.*,
　　638 F.3d 768 (11th Cir. 2011)…………………….………………………4

*Barr v. Am. Ass'n of Political Consultants*,
　　140 S. Ct. 2335 (2020)…………………………………………………3

*BedRoc Ltd., LLC v. U.S.*,
　　124 S. Ct. 1587 (2004)………………………..……………………13

*Bell Atlantic Corp. v. Twombly*,
　　550 U.S. 544 (2007)…………………………...…………………………3

*Brickman v. Facebook, Inc.*,
　　230 F. Supp. 3d 1036 (N.D. Cal. 2017)…………………………………..9

*Burton v. Ghosh*,
　　961 F.3d 960 (7th Cir. 2020)…………………………………………..8

*Carmouche v. A1 Diabetes & Med. Supply, Inc.*,
　　586 F. Supp. 3d 795 (W.D. Tenn. 2022)………………..………………10

*Clair v. CVS Pharm., Inc.*,
　　222 F. Supp. 3d 779 (N.D. Cal. 2016)………………....………………6, 7

*Dennis v. Amerigroup Wash., Inc.*,
　　No. 3:19-CV-05165-RBL,
　　2020 WL 618472 (W.D. Wash. Feb. 10, 2020)………………………. 6, 7, 9

*Dorfman v. Albertsons, LLC*,
　　No. 1:18-cv-00094-EJL, 2018 WL 9988655 (D. Idaho Oct. 18, 2018)…....10

*Durnford v. MusclePharm Corp.*,
　　907 F.3d 595 (9th Cir. 2018)…………………..…………………………..8

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019)…………………...…………………………..5

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997)………………………..…………………….3

*Jackson v. Blitt & Gaines, P.C.*,
    833 F.3d 860 (7th Cir. 2016)…………………………………………..13, 14

*Kolinek v. Walgreen Co.*,
    No. 13 C 4806, 2014 WL 518174 (N.D. Ill. Feb. 10, 2014)……...…………7

*Lemos v. Credit One Bank, N.A.*,
    960 F.3d 1164 (9th Cir. 2020)…………………….…………………………5

*Lindenbaum v. CVS Health Corp.*,
    No. 1:17-CV-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018)………...…6

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024)……………………………………………………13

*Lusnak v. Bank of Am., N.A.*,
    883 F.3d 1185 (9th Cir. 2018)…………………………………………………8

*Mairs v. Allsup LLC*,
    No. 19-CV-01086-NJR, 2020 WL 2745981 (S.D. Ill. May 27, 2020)…….11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008)………………………...…………………..3

*Matthews v. Mid City Cannabis Club, Inc.*,
    No. CV 20-07841 PA (JPRx),
    2021 WL 1567496 (C.D. Cal. Mar. 2, 2021)………………………………..3

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    145 S. Ct. 2006 (2025)……………………………….…………………13

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014)……………………...…………………5

*Roberts v. Medco Health Sols., Inc.*,
    No. 4:15 CV 1368 CDP, 2016 WL 3997071 (E.D. Mo. July 26, 2016)…….6

*Sandifer v. U.S. Steel Corp.*,
    134 S. Ct. 870 (2014)…………………………………………………13

*Satterfield v. Simon & Schuster*,
    569 F.3d 946 (9th Cir. 2009)……………...…………………………13, 14

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998)…………...…………………………11

*Smith v. Rite Aid Corp.*,
    No. 17-CV-6044 CJS, 2018 WL 5828693 (W.D.N.Y. Nov. 7, 2018)....16, 17

*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012)………………………...………………5

*U.S. v. Gonzalez–Torres*,
    309 F.3d 594 (9th Cir. 2002)…………………………………………13

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017)………………...………………………14

*Xechem, Inc. v. Bristol–Myers Squibb Co.*,
    372 F.3d 901 (7th Cir. 2004)………………...……………………8

**Rules and Regulations**

47 C.F.R. § 64.1200(a)(3)(v)…………………………...…………………17

47 C.F.R. § 64.1200(f)(4)……………………………………………….4

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    30 FCC Rcd. 7961 (2015)…………………………...………………..15

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    31 FCC Rcd. 9054 (Aug. 4, 2016)…………………………………5, 6, 7

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,
     35 FCC Rcd. 2840 (2020)…………..…………………………………………4

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,
     35 FCC Rcd. 5953 (2020)……………………...…………………..4, 15

**Secondary Authorities**

Black's Law Dictionary (6th ed. 1990)……………..……………………..14

**Statutes**

47 U.S.C. § 227(b)(1)(A)………………………...……………………………4

47 U.S.C. § 227(b)(2)…………………………..……………………………4

**Introduction**

Monarch Healthcare, A Medical Group, Inc. ("Defendant")[1] moves under Rule 12(b)(6) to dismiss Liseth Aguirre's claims against it—arguing that the "emergency purposes" exception to the Telephone Consumer Protection Act ("TCPA") should be construed so broadly as to exempt calls it says were placed to confirm a doctor's request for approval of medical treatment. This Court should deny Defendant's motion for at least three independent reasons.

First, because Defendant was attempting to reach two persons who Ms. Aguirre does not know, Defendant's calls necessarily did not relate to a medical situation *as to Ms. Aguirre*—let alone an emergency as to her. Given as much, under Ninth Circuit precedent, and in line with commentary from the Federal Communications Commission ("FCC"), the "emergency purposes" exception cannot apply to Defendant's robocalls.

Second, Defendant's arguments stretch far beyond Ms. Aguirre's allegations, as Defendant's stated reasons for its calls are not found in Ms. Aguirre's Amended Complaint. Because Ms. Aguirre provides detailed factual support for her allegations that the calls were not placed for "emergency purposes," Defendant's defense fails at this early stage.

Finally, the FCC has already found that *urgent, but non-emergency* healthcare-related calls are not covered by the "emergency purposes" exception. And the unambiguous language Congress used in exempting calls made for "emergency purposes" makes clear that the purpose of the call must be to address a sudden or unforeseen situation that requires immediate action. Nothing in the content of the prerecorded voice messages that Ms. Aguirre received from Defendant indicates that Defendant placed its calls for such a purpose.

---

[1]    Ms. Aguirre amended her complaint on July 17, 2025 to substitute Monarch Healthcare, A Medical Group, Inc. for Optum Health Plan of California as the correct defendant. *See* ECF Nos. 25, 29.

For these and the other reasons set forth more fully below, this Court should deny Defendant's motion to dismiss, ECF No. 28, in its entirety.

**Factual Background**

In or around March 2024, Cotiviti, Inc. ("Cotiviti"), at the direction and on behalf of Defendant, began placing calls to Ms. Aguirre's cellular telephone number. Amended Complaint, ECF No. 25, at ¶¶ 9, 23. Specifically, Cotiviti placed calls to Ms. Aguirre's cellular telephone number on at least March 11, 2024 (2 calls), March 12, 2024, July 31, 2024 (2 calls), August 1, 2024 and August 6, 2024. *Id.* at ¶¶ 12-18.

In connection with each of those calls, Cotiviti, on behalf of Defendant, delivered a prerecorded voice message. *Id.* Two of the six messages Cotiviti delivered referred to a request from a "doctor," while the remaining four messages contained no obvious health-related content. *Id.* All requested a call back at "any time," noting that Defendant could be reached any day of the week. *Id.*

Defendant directed Cotiviti to place its calls to Ms. Aguirre's cellular telephone number intending to reach James Duran or Jonathan Duran. *Id.*; *see also id.* at ¶ 22. Ms. Aguirre, however, does not know James Duran or Jonathan Duran. *Id.* at ¶¶ 28-29. And Ms. Aguirre never gave consent to Defendant to call her cellular telephone number to reach James Duran or Jonathan Duran. *Id.* at ¶ 34.

As well, Ms. Aguirre has never had an insurance plan or account with Defendant and has never been a customer of Defendant. *Id.* at ¶¶ 30-31. She did not provide her cellular telephone number to Defendant. *Id.* at ¶ 32. And Ms. Aguirre did not provide Defendant with consent to place calls, in connection with which Defendant used an artificial or prerecorded voice, to her cellular telephone number. *Id.* at ¶ 33.

2

## Legal Standard

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021) (Anderson, M.J.).[2] Indeed, as the Ninth Circuit noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." *Matthews*, 2021 WL 1567496, at *2. The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## The Telephone Consumer Protection Act

As the Supreme Court noted:

> Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back.

*Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). To that end, the TCPA prohibits, absent prior express consent, calls made to cellular

---

[2]    Internal citations, quotations, and footnotes are omitted unless otherwise noted.

telephones using "an artificial or prerecorded voice," but excludes calls "made for emergency purposes[.]" 47 U.S.C. § 227(b)(1)(A).

"Congress was clear in enacting the TCPA that consumers should be protected from unwanted robocalls." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 35 FCC Rcd. 5953, at ¶ 8 (2020) (the "Anthem Order"). As a result, "[t]he TCPA is essentially a strict liability statute." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

Though the TCPA excludes any call "made for emergency purposes," the TCPA does not define the term "emergency purposes." 47 U.S.C. § 227(b)(1)(A). Congress did task the FCC with promulgating regulations implementing the statute. *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").

And the FCC has defined the term "emergency purposes" to mean "calls made necessary in any situation affecting the health and safety of consumers[.]" 47 C.F.R. § 64.1200(f)(4). But the FCC later made clear that the exception is intended for "*instances that pose significant risks to public health and safety*, and where the use of prerecorded message calls could speed the dissemination of information regarding ... potentially hazardous conditions to the public." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 35 FCC Rcd. 2840, 2841 at ¶ 4 (2020) (emphasis added).

## Argument

**I.    Prerecorded messages that Defendant delivered to Ms. Aguirre's cellular telephone intended for someone other than Ms. Aguirre do not fall within the TCPA's "emergency purposes" exception.**

Defendant contends that the sole focus of the "emergency purposes" inquiry is "the *caller's* purpose, not the *recipient's* circumstances." ECF No. 28-1 at 14:20-23 (emphasis in original). As a result, Defendant asserts that it is

irrelevant to the "emergency purposes" inquiry that Defendant's calls reached Ms. Aguirre instead of its purported enrollees, James Duran and Jonathan Duran. *Id*. Not so.

In *Duguid v. Facebook, Inc.*, the plaintiff alleged that Facebook sent unsolicited text messages to him as a security precaution to alert him when his account was accessed from an unrecognized device or browser. 926 F.3d 1146, 1149 (9th Cir. 2019), *rev'd on other grounds, Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). There was one problem—the plaintiff did not have a Facebook account and had never consented to receiving the messages. *Id*.

Facebook argued that the text messages were made for "emergency purposes." *Id*. at 1152. But the Ninth Circuit gave short shrift to that argument: "Duguid did not have a Facebook account, so his account could not have faced a security issue, and Facebook's messages fall outside even the broad construction the FCC has afforded the emergency exception." *Id*.; *see also* In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 31 FCC Rcd. 9054, 9063 ¶ 21 n.76 (Aug. 4, 2016) ("2016 Order") ("We emphasize that our finding will not promote the proliferation of unwanted robocalls from any third party to any person under the auspices of an emergency. First, purported emergency calls cannot be targeted to just any person. These calls must be about a bona fide emergency that is relevant to the *called party*.") (emphasis added).

Significant then, is that a "called party" under the TCPA is "the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012). The term "called party" does not mean "intended recipient," even where the caller reaches a wrong number. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ("the term 'called party' does not mean 'intended recipient'"); *see also Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (adopting the approach of the Seventh and Eleventh Circuits and noting that they

"have . . . both rejected [the] 'intended recipient' interpretation" of a "called party" as defined by the TCPA).

Here, prerecorded voice messages that Defendant caused to be delivered to Ms. Aguirre's cellular telephone were intended for someone other than her, and she had no relationship with Defendant and did not provide Defendant consent to call her. *See* ECF No. 25 at ¶¶ 26-34. Accordingly, the prerecorded voice messages that Defendant caused to be delivered to Ms. Aguirre's cellular telephone were not, and simply could not have been, "about a *bona fide* emergency that is relevant to the called party [Ms. Aguirre]." 2016 Order at 9062 n.76.

Ms. Aguirre recognizes that some courts have found that prerecorded voice messages directed to wrong or reassigned cellular telephone numbers can fall within the TCPA's "emergency purposes" exception, *see, e.g.*, *Roberts v. Medco Health Sols., Inc.*, No. 4:15 CV 1368 CDP, 2016 WL 3997071, at *1-3 (E.D. Mo. July 26, 2016); *Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2018 WL 501307, at *3 (N.D. Ohio Jan. 22, 2018), and that other courts have called attention to but refused to weigh in on the issue. *See, e.g.*, *Dennis v. Amerigroup Wash., Inc.*, No. 3:19-CV-05165-RBL, 2020 WL 618472, at *6 (W.D. Wash. Feb. 10, 2020), *amended on denial of reconsideration,* No. 3:19-CV-05165-RBL, 2020 WL 996856 (W.D. Wash. Mar. 2, 2020).[3] None of these courts, however, provided an explanation as to how applying the TCPA's "emergency purposes" exception to calls made to wrong or reassigned telephone number can be reconciled with the FCC's clear and unambiguous statement that calls to which the "emergency purposes" exception applies "must be about a *bona fide* emergency that is relevant to the called party." 2016 Order at 9062 n.76; *accord Clair v. CVS Pharm., Inc.*, 222 F. Supp. 3d 779, 781 (N.D. Cal.

---

[3]     *Roberts* and *Dennis* were decided on summary judgment, not at the pleadings stage. Defendant's reliance on those opinions is therefore misplaced.

2016) ("Assuming, for argument's sake only, that Roberts was correctly decided, it does not stand for the proposition that all prescription-related calls are categorically made for emergency purposes…CVS's argument stands for the proposition that pharmacies are totally immune from liability for making automated calls about prescriptions, no matter how often the calls are made and no matter how many times the customer asks for them to stop. This defies common sense.").

And while the court in *Dennis* came closest to doing so—by referencing the FCC's statement that it "encourage[s] educational organizations to regularly update their emergency calling lists to ensure that emergency-purpose calls do in fact reach the parent or guardian of each affected student and are not received by consumers with no connection to the school," and correspondingly reasoning that "[t]his suggests that even wrong-number calls can qualify for the exemption," 2020 WL 618472, at *6—it failed to clarify how the FCC's encouragement to educational organizations could override its explicit declaration that calls to which the "emergency purposes" exception applied "must be about a *bona fide* emergency that is relevant to the called party." 2016 Order, 31 F.C.C. Rcd. at 9062 n.76.

In any event, *Duguid* controls here. Because Defendant's calls did not concern Ms. Aguirre, its purported "emergency purposes" defense fails.

## II. Defendant's "emergency purposes" defense is not established through the allegations in the Amended Complaint.

### A. Ms. Aguirre alleges with factual support that Defendant's calls were not placed for "emergency purposes."

Because the "emergency purposes" exception is an affirmative defense to a TCPA claim, a defendant raising the defense "bears the burden of proof." *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, at *2 (N.D. Ill. Feb. 10, 2014), *vacated on other grounds on reconsideration,* 2014 WL 3056813

(N.D. Ill. July 7, 2014). "Ordinarily, affirmative defenses … may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission.").[4]

Dismissal based on an affirmative defense is appropriate "[o]nly when the plaintiff pleads itself out of court" by "admit[ting] all the ingredients of an impenetrable defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018). That is not the case here.

At this early stage, Defendant has not answered the Amended Complaint and, therefore, has not yet asserted an affirmative defense of "emergency purposes"—let alone provided evidence that each of its calls were placed for emergency purposes. Moreover, Ms. Aguirre pleads otherwise.

Indeed, Ms. Aguirre alleges that the calls were not made for "emergency purposes." *See* ECF No. 25 at ¶ 37. She alleges that the prerecorded voice messages that Defendant left on Ms. Aguirre's cellular telephone did not indicate to Ms. Aguirre that the calls were exigent in nature, required her immediate attention or an urgent response, or that there was any risk to Ms. Aguirre's (or anyone else's) health or safety. *Id*. at ¶¶ 12-18, 38, 44.

To the contrary, Defendant's messages requested a call back at "any time"—hardly an insistence that its calls be returned immediately or that there

---

[4]   The "proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state claim," but to "answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020) (collecting cases).

was some heightened importance. *Id*. at ¶¶ 12-18. Defendant's messages also ended with telling Ms. Aguirre to have a "good day"—not by impressing upon her any particular important or emergent situation warranting her immediate attention. *Id*.

While some of the prerecorded messages at issue referenced "important information" or "information about an approved authorization," there is simply no indication in any of the messages that the calls Defendant placed were "necessary" due to an emergent issue. *See*, *e.g.*, *Dennis*, 2020 WL 618472, at *3 ("But there is no evidence that the intended recipient of the call to Dennis actually had a serious need for medication[.]").

Further, Ms. Aguirre alleges that Defendant delivered prerecorded voice messages to her cellular telephone over at least a five-month period, ECF No. 25 at ¶¶ 12-18, 47, and intended for two different persons. *Id*. at ¶ 17 (intending to reach James Duran); *Id*. at ¶ 18 (intending to reach Jonathan Duran). These allegations undermine Defendant's contention that the calls were necessary due to an emergency medical situation. *See*, *e.g.*, *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1047 (N.D. Cal. 2017) ("Emergency calls by their statutory definition would only be allowed under limited circumstances, *for a limited time*, and for limited purposes.") (emphasis added).[5]

---

[5]    Defendant attempts to recast Ms. Aguirre's allegations that she received calls from Defendant over a five-month period as evidencing that three separate sets of calls occurred—March 11-12, 2024, July 31-August 1, 2024, and then August 6, 2024 "to reach a different consumer[.]" ECF No. 28-1 at 13:28-14:5. But in doing so Defendant provides further support for Ms. Aguirre's contention that factfinding is necessary to assess the applicability of any "emergency purposes" defense here. Because if the messages Defendant delivered to Ms. Aguirre resulted from three distinct sets of calls intended for two different persons, then Defendant will need to show three separate instances of emergent medical situations that necessitated the calls. Alternatively, if as alleged in the Amended Complaint, Defendant's calls comprised a single course of conduct

Additionally, Ms. Aguirre also alleges that Defendant farmed the calls out to a third-party vendor to handle—rather than placing the calls directly—further calling into question Defendant's contention that the calls were placed due to an emergency situation. ECF No. 25 at ¶ 23. There is nothing in the record evidencing the time that elapsed between when Defendant decided to place calls to Ms. Aguirre's cellular telephone number, and when it directed its vendor to do so. Nor is there any evidence in the record as to how soon after Defendant directed its vendor to place the calls did the vendor do so. All of this information is relevant to a determination as to whether each call was necessary due to a medical emergency. *See*, *e.g.*, *Dorfman v. Albertsons, LLC*, No. 1:18-cv-00094-EJL, 2018 WL 9988655, at *5 (D. Idaho Oct. 18, 2018) ("For the purposes of the present Motion to Dismiss, the Court finds the emergency purposes exception to TCPA does not apply as a matter of law and based on Plaintiff's allegations alone. First, there is no record for the Court to make a fact-specific determination as to whether the calls made between June 12, 2017 and July 10, 2017 fell within the emergency purposes exception to TCPA liability. They likely do, but the record is silent on the issue and the burden is on the Defendant to demonstrate that dismissal is warranted on this affirmative defense.").

over a five-month period, then the months of time between the continuation of the calls forecloses any assertion that the calls were necessary due to an emergent medical situation. Either way, discovery is necessary. *See Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 801 (W.D. Tenn. 2022) ("Whether the calls were truly necessary and for 'emergency purposes' is a question of fact requiring discovery into A1's reasons and criteria for making such calls and leaving voice messages.").

**B. This Court should reject Defendant's attempts to interject untested factual material that is not included within the four corners of the Amended Complaint.**

Because the Amended Complaint itself does not establish Defendant's "emergency purposes" defense (and in fact refutes it), Defendant repeatedly interjects untested factual assertions into its briefing. *See*, *e.g.*, ECF No. 28-1 at 5:15-19 ("Defendant … is a healthcare delivery organization which operates within the broader Optum network and provides and arranges for medical services for enrollees in various health insurance plans contracted with Optum affiliated entities."); *id*. at 6:1-2 ("[T]he calls were specifically placed for the purpose of confirming a doctor's requests for insurance pre-authorization for an enrollee's medical treatment."); *id*. at 6:8-9 ("Defendant obtains the consent required by the TCPA to place calls to its enrollees."); *id*. at 7:1-2 (asserting that Ms. Aguirre "inherited a phone number from Defendant's enrollee[.]"); *id*. at 13:3-5 ("[T]he purpose of the calls was to reach Defendants' enrollees to confirm prior authorization approval for coverage of medical treatment at the request of the enrollee's physician."); *id*. at 15, n.4 (the calls at issue in this case "sought to confirm preauthorization for medical treatment[.]").

But "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint[.]" *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998); *see also Mairs v. Allsup LLC*, No. 19-CV-01086-NJR, 2020 WL 2745981, at *2 (S.D. Ill. May 27, 2020) (denying motion to dismiss TCPA claim because questions of liability were fact-based and outside the four corners of the complaint.).

The content of the messages set forth in the Amended Complaint offer no evidence that they are of an emergent nature, and many offer no indication that they are healthcare-related at all. For instance, the March 11, 2024, July 31, 2024, and August 6, 2024 messages simply reference "important information" or

an "approved authorization" with no context whatsoever as to what that information or authorization relates. *See* ECF No. 25 at ¶¶ 12-13, 15-16, 18. The remaining messages on March 12, 2024 and August 1, 2024 refer to a "request your doctor made," *id.* at ¶¶ 14, 17, but otherwise provide no indication that their purpose was to "confirm[] a doctor's requests for insurance pre-authorization for an enrollee's medical treatment." ECF No. 28-1 at 6:1-2.

In fact, the messages state the opposite—they relay that Defendant will share information with the call recipient, not that it will request confirmation from the call recipient. *See* ECF No. 25 at ¶¶ 12-18. And by requesting a call back at "any time," Defendant's messages did not convey any sense of urgency at all, let alone that an emergency situation existed.

**III.    Even had Defendant established that all if its calls were to confirm prior authorization approval for coverage of medical treatment—it has not—the messages would not fall within the "emergency purposes" exception.**

As set forth above, there are no allegations in the Amended Complaint that the purpose of each of Defendant's prerecorded voice messages to Ms. Aguirre's cellular telephone was to confirm prior authorization approval for coverage of medical treatment. But even assuming *arguendo* that was the purpose of each of Defendant's messages, the "emergency purposes" exception still would not apply because the calls were not placed to address an unforeseen medical situation that called for immediate action.

Last month, the Supreme Court explained that a district court must independently assess whether an agency interpretation of a statute is proper:

> In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025); *see also Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) ("[W]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries."). Pursuant to *McLaughlin*, and using rules of statutory interpretation, this Court should conclude the TCPA means what it says—that calls made to a cellular telephone that deliver a prerecorded message are excluded from the TCPA only if their purpose is to address a sudden or unforeseen situation that calls for immediate action.

"In construing the provisions of a statute, [courts] first look to the language of the statute to determine whether it has a plain meaning." *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009). "The preeminent canon of statutory interpretation requires [a court] to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, [a court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. U.S.*, 124 S. Ct. 1587, 1593 (2004); *see also U.S. v. Gonzalez–Torres*, 309 F.3d 594, 600 (9th Cir. 2002) ("Since the current statute is unambiguous, it should have been interpreted in accordance with its plain meaning.").

Unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014). Courts find a word's ordinary meaning by looking at what the word meant when the statute was enacted. *Jackson v. Blitt & Gaines,*

*P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) ("We look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries.").

The TCPA was enacted in 1991. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). The 1990 version of Black's Law Dictionary defines "emergency" as:

> [a] sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication or circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for immediate action without time for full deliberation.

Black's Law Dictionary 522 (6th ed. 1990).[6]

"[P]urpose" is defined as:

> [t]hat which one sets before him to accomplish or attain; an end intention or aim, object, plan, project. Term is synonymous with ends sought, an objection to be attained, an intention.

*Id*. at 1236.[7]

Thus, by including the phrase "emergency purposes" in the TCPA, Congress clearly intended to exclude only those calls aimed at addressing a true unforeseen situation that required the immediate attention of the called party. *Accord Satterfield*, 569 F.3d at 953 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."). Given the clear statutory language, a call to confirm prior authorization approval for coverage of medical treatment that requests a return call at "any time" is simply not a call made for "emergency purposes."

---

[6]    https://archive.org/details/blackslawdiction00henr/page/522/mode/2up (last accessed July 24, 2025).

[7]    https://archive.org/details/blackslawdiction00henr/page/1236/mode/2up (last accessed July 24, 2025).

But that is not all. In line with the unambiguous meaning of "emergency purposes" as used in the TCPA, the FCC previously rejected a request by a health benefits company to exclude under the "emergency purposes" exception non-emergency healthcare-related calls placed to cellular telephone numbers without the consent of the called party from the reach of the TCPA—even though those calls may have been of an "urgent" nature. *See* Anthem Order at ¶ 10 ("We also reject Anthem's request that we exempt certain non-emergency, health care related calls that it claims are 'urgent' from the requirements of the TCPA ... the calls Anthem describes do not appear to be made necessary by incidents of imminent danger including health risks affecting health and safety.").

Given as much, even had Defendant established that all of its calls were to confirm prior authorization approval for coverage of medical treatment—it has not—the messages would not fall within the "emergency purposes" exception.

### IV.    Adopting Defendant's application of the "emergency purposes" exception would make the TCPA's healthcare message exemption superfluous.

Separate from the "emergency purposes" exception, the FCC created an exemption to liability under the TCPA for certain calls from healthcare providers, so long as those calls satisfy a list of strict criteria. *See* In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 8030–32, ¶¶ 144–148 (2015).[8] The healthcare message exemption specifically covers "calls for which there is exigency and that have a healthcare treatment purpose," including "appointment and exam confirmations and reminders[.]" *Id*. at ¶ 146.

Assuming Defendant can establish that each of its calls to Ms. Aguirre were to confirm prior authorization approval for coverage of medical treatment

---

[8]    Set aside in part by *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

for one of its enrollees, then the healthcare exemption could arguably apply to the calls. Indeed, there is little difference between confirming approval of coverage for scheduled, or a to-be-scheduled medical treatment, and confirming the appointment for the treatment itself.

In assessing the interplay between the "emergency purposes" exception and the healthcare message exemption in a nearly identical situation, the Western District of New York wrote:

> "It is a commonplace of statutory construction that the specific governs the general. ... [T]his canon is particularly relevant where two provisions are interrelated and closely positioned, both in fact being parts of the same scheme." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 31, 133 S. Ct. 2247, 2266, 186 L.Ed. 2d 239 (2013) (citations and internal quotation marks omitted). Under the TCPA regulatory scheme at issue, both the emergency purposes exception and the exigent healthcare message exception could arguably apply to the subject calls, but the former exception is more general, while the latter exception (which specifically refers to "prescription notices") is more specific. Consequently, the more-specific provision applies, which means that prescription notice calls must meet the requirements for exigent healthcare calls, discussed earlier. Additionally, interpreting the regulatory framework in the manner urged by Rite Aid would make the FCC's inclusion of "prescription notices" within the types of calls covered by the exigent healthcare message exception superfluous. For these reasons, Rite Aid cannot rely on the emergency purpose exception to obtain dismissal under Rule 12(b)(6).

*Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 WL 5828693, at *5 (W.D.N.Y. Nov. 7, 2018).

Similarly here, the healthcare message exemption—which specifically covers exigent calls placed to deliver appointment and exam confirmations and reminders—is more specific than the "emergency purposes" exception. Consequently, under basic principles of statutory construction, the healthcare message exemption is applicable.

Thus, Defendant's calls must meet the requirements for the healthcare message exemption. Applying the "emergency purposes" exception to the calls at issue would make the FCC's inclusion of exam confirmation and reminder calls within the types of calls covered by the healthcare message exemption superfluous.[9]

### Conclusion

For the foregoing reasons, Ms. Aguirre respectfully requests this Court deny Defendant's motion to dismiss.

Date: July 28, 2025

*/s/ James L. Davidson*
James L. Davidson*
Greenwald Davidson Radbil PLLC

Anthony I. Paronich*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

Counsel for Plaintiff and the proposed class

---

[9] This is not to say that Defendant's calls satisfy the healthcare message exemption—they do not. *See* 47 C.F.R. § 64.1200(a)(3)(v) (limiting the healthcare messaged exemption to one call per day). But because the purpose of the calls arguably fits under the healthcare message exemption, Defendant cannot rely on the "emergency purposes" exception. *See Smith*, 2018 WL 5828693, at *5 n.4 ("The FCC has indicated, in a brief that it filed in another proceeding, that to the extent that there might be a healthcare-related call that falls under the emergency purpose exception but outside of the exigent healthcare call exception, parties can rely on the emergency-purposes exception on a case-by-case basis. The Court interprets this to mean that a party cannot rely on the emergency purpose exception for calls, such as those in this case, that fit under the exigent healthcare call exception.").

1

2       Dana J. Oliver, Esq. (SBN: 291082)
        Oliver Law Center, Inc.
3       8780 19th Street #559
4       Rancho Cucamonga, CA 91701
        Telephone: (855) 384-3262
5       Facsimile: (888) 570-2021
        dana@danaoliverlaw.com
6

7       Local Counsel for Plaintiff and the
8       proposed Class

9

10      *admitted *pro hac vice*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28