TROUTMAN PEPPER LOCKE LLP
Chad Fuller (SBN 190830)
chad.fuller@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:  858.509.6000
Facsimile:   858.509.6040

TROUTMAN PEPPER LOCKE LLP
Jessamyn E. Vedro, Bar No. 280209
jessamyn.vedro@troutman.com
350 South Grand Ave, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800

*Attorneys for Defendant
Monarch Healthcare, A
Medical Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISETH AGUIRRE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MONARCH HEALTHCARE, A MEDICAL GROUP, INC.,<br><br>　　　　　Defendant. | Case No. 5:25-cv-01161-JGB (SPx)<br><br>(Assigned to Hon. Jesus G. Bernal)<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:　　　August 18, 2025<br>Time:　　　9:00 a.m.<br>Judge:　　Jesus G. Bernal<br>Place:　　　Riverside<br>　　　　　　Courtroom 1<br><br>Action Filed:　May 12, 2025 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

    A.     Reaching A "Wrong Number" Does Not Change the Call's Purpose .......................................................................................... 2

    B.     Plaintiff's Own Complaint Demonstrates the Emergent Nature of Monarch's Calls ............................................................. 4

    C.     Prior Authorization Calls Fall Squarely Within the Emergency Purpose Exception ............................................................ 7

CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l, et al., v. FCC*,
   No. 15-1211, 2016 WL 194146 (C.A.D.C.) ........................................................ 9

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 5

*Dennis v. Amerigroup Washington, Inc.*,
   No. 3:19-cv-05165, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020) ........... 2, 7, 8

*Duguid v. Facebook, Inc.*,
   926 F.3d 1146 (9th Cir. 2019) ......................................................................... 3, 4

*Durnford v. MusclePharm Corp.*,
   907 F.3d 595 (9th Cir. 2018) ............................................................................. 5

*Gabertan v. Walmart, Inc.*,
   523 F. Supp. 3d 1254 (W.D. Wash. 2021) ............................................... 5, 6, 7, 8

*Glair v. City of Los Angeles*,
   No. CV 09-6450-R (RNB), 2010 WL 1407357
   (C.D. Cal. Feb. 17, 2010) ................................................................................... 6

*Lindenbaum v. CVS Health Corp.*,
   No. 1:17-cv-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018) ............ 3, 4, 7, 8

*Papasan v. Allain*,
   478 U.S. 265 (1986) ........................................................................................... 5

*Poirier v. City of North Hollywood*,
   No. CV 11-2030-JVS (RNB), 2011 WL 6046920
   (C.D. Cal. Sept. 20, 2011) .................................................................................. 6

*Roberts v. Medco Health Sols., Inc.*,
   No. 4:15-cv-1368, 2016 WL 3997071 (E.D. Mo. July 26, 2016) ............ 3, 7, 8, 9

*In re Rules & Regulations Implementing the Telephone Consumer
   Protection Act of 1991*,
   31 F.C.C. Rcd. 9054 ........................................................................................... 4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
 35 FCC Rcd. 6521 (2020) ................................................................................. 8

*In re Telephone Consumer Protection Act of 1991*,
 7 FCC Rcd. 2736 (FCC 1992) ........................................................................... 7

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................................... 1, 5

L.R. 11-6.1 ............................................................................................................. 10

TROUTMAN PEPPER LOCKE LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

-iii-
TABLE OF AUTHORITIES

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Monarch HealthCare, A Medical Group, Inc. ("Monarch"),[1] by counsel, submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint ("Complaint") for Failure to State a Claim. In support thereof, Monarch states as follows.

## INTRODUCTION

Plaintiff opens her opposition citing the purportedly universal American disdain for "robocalls" (Opp. at 3), but ignores the key distinguishing issue that sets this case apart from a run-of-the-mill TCPA case: Monarch is *not* a telemarketer or political advocacy group indiscriminately sending out mass communications to non-consenting consumers. To the contrary, Monarch's telephone campaigns are purposed to reach its enrolled members to provide vitally important, emergency-purposed healthcare to patients who are in need of medical treatment. That common-sense distinction is exactly why Congress created the Emergency Purpose Exception to liability under the TCPA, and the calls at issue in this case fall squarely within that exception.

To try to avoid that conclusion, Plaintiff has asserted three arguments, none of which are successful.

First, Plaintiff argues that the Emergency Purpose Exception does not apply simply because Monarch was attempting to reach two other consumers and thus did not have an emergency purpose to contact Plaintiff. But this focus on Plaintiff's subjective circumstances—rather than Monarch's objective purpose in placing the call to a number it believed belonged to its enrollees—misses the point and defeats

---

[1] Although Plaintiff's original Complaint named Optum Health Plan of California as the defendant, the calls at issue were placed to a phone number associated with the enrollee of an affiliate, Monarch HealthCare, A Medical Group, Inc. ("Monarch"). On July 17, 2025, Plaintiff filed a First Amended Complaint addressing this misnamed Defendant issue. (ECF No. 25.) Plaintiff has also voluntarily dismissed the previously named defendant, Optum Health Plan of California (ECF No. 29).

the purpose of the Emergency Purpose Exception, which is why it is contrary to several well-reasoned decisions that Plaintiff simply tries to handwave away.

Second, Plaintiff tries to argue that the Motion to Dismiss relies on facts outside of the four corners of the Complaint, and that she has sufficiently alleged that the calls were *not* made for emergency purposes. Not so. The excerpts of the voice messages that Plaintiff herself included in her Complaint demonstrate that the calls were made for an emergency purpose—and Plaintiff's mere conclusory assertion that they were not made for an emergency purpose is not sufficient to survive a motion to dismiss.

Finally, Plaintiff argues that calls related to a doctor's request for prior authorization to provide medical treatment to a patient do not qualify for the Emergency Purpose Exception because they "were not placed to address an unforeseen medical situation that called for immediate action." But Plaintiff's attempt to so narrowly limit the Emergency Purpose Exception finds no support in precedent; rather such a narrow application would be contrary to numerous cases deciding that calls very similar to those at issue in this case qualify for the Emergency Purpose Exception.

For all of these reasons, Monarch's Motion to Dismiss should be granted.

## ARGUMENT

### A. Reaching A "Wrong Number" Does Not Change the Call's Purpose

Plaintiff argues that the Emergency Purpose Exception cannot ever apply to a "wrong number" case such as this one (as alleged) because in such cases, the caller never has an emergency purpose to contact the subscriber of the wrong number. That position is contrary to numerous cases and guidance affirming that it is the *objective purpose* of the call that matters.

As noted in the Motion to Dismiss, numerous courts have held that because the objective purpose behind the call is the relevant inquiry for the Emergency Purpose Exception, it does not make a difference if the call unintentionally reaches a wrong number. Motion at 9-12; *Dennis v. Amerigroup Washington, Inc.*, No. 3:19-cv-05165,

2020 WL 618472 (W.D. Wash. Feb. 10, 2020) (noting "even wrong-number calls can qualify for the [emergency purpose] exemption"); *Lindenbaum v. CVS Health Corp.*, No. 1:17-cv-1863, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018) (holding calls made to wrong consumer were exempt under Emergency Purpose Exception where the plaintiff "fail[ed] to allege any affirmative action she took to tell CVS that CVS was calling the wrong customer number"); *Roberts v. Medco Health Sols., Inc.*, No. 4:15-cv-1368, 2016 WL 3997071, at *2-3 (E.D. Mo. July 26, 2016) (holding that calls received by the plaintiff "that were intended to reach the former owners of the number" were "covered under the "emergency purposes" exception to the TCPA").

Those holdings make perfect sense in view of the Exception's purpose. The Emergency Purpose Exception ensures that defendants who need to contact consumers to communicate important information related to the health and safety of those consumers can freely do so without fearing the imposition of liability from an unintentional (and often unavoidable) mistake in contacting a different consumer due to a reassigned or incorrectly provided phone number. Plaintiff's proposed interpretation would result in the Emergency Purpose Exception having no application at all in such instances, which would chill important communications and defeat Congress's purpose in creating the Exception.

Plaintiff attempts to get around this authority by relying instead on a single paragraph from *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1152 (9th Cir. 2019), *rev'd and remanded by Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), and a footnote from an FCC advisory opinion cited by *Duguid*. (Opp. at 5.) That reliance is misplaced. The Ninth Circuit's now-reversed *Duguid* decision only briefly addressed the Emergency Purpose Exception in a single paragraph, and its conclusion that the Exception did not apply was not based simply on the fact that the calls reached a wrong number but that the calls at issue—automated alerts regarding unauthorized access to a social media account—"f[e]ll outside even the broad construction the FCC has afforded the emergency exception," *i.e.*, "calls made necessary in any situation

1  affecting the *health* and *safety* of consumers." *Duguid*, 926 F.3d at 1152 (emphasis
2  added).
3      Further, the *Duguid* opinion relied on a footnote from a 2016 FCC advisory
4  opinion that noted: "[P]urported emergency calls cannot be targeted to just any
5  person. These calls must be about a bona fide emergency that is relevant to the called
6  party." *Id.* (quoting *In re Rules & Regulations Implementing the Telephone Consumer
7  Protection Act of 1991*, 31 F.C.C. Rcd. 9054, 9063 ¶ 21 n.76 (Aug. 4, 2016)).  But
8  that advisory opinion does not even address a "wrong number" scenario.  Instead, it
9  merely noted in a footnote that the Emergency Purpose Exception does not "promote
10 the proliferation of unwanted robocalls from *any* third party to *any* person under the
11 auspices of an emergency," in part because "purported emergency purpose calls
12 cannot be targeted to just any person." *In re Rules & Regulations Implementing the
13 Telephone Consumer Protection Act of 1991*, 31 F.C.C. Rcd. 9054, 9063 ¶ 21 n.76
14 (Aug. 4, 2016).  When viewed in context, it is clear the FCC's footnote is only
15 intended to state the obvious fact that the Emergency Purpose Exception does not
16 justify mass, non-targeted robocalls to the general public, because it only applies to
17 situations where the call was motivated by an emergency purpose for contacting a
18 specific, targeted consumer.  It has no bearing on the circumstance (as here) where a
19 defendant had an emergency purpose to contact a specific consumer regarding an
20 emergency relevant to that consumer, yet unintentionally contacted a different
21 consumer because the consumer gave an incorrect number or their number changed.
22     Accordingly, Plaintiff's attempt to avoid the Emergency Purpose Exception
23 simply because she was not the intended recipient of the calls fails.

### B. Plaintiff's Own Complaint Demonstrates the Emergent Nature of Monarch's Calls

26 Plaintiff next attempts to avoid the Emergency Purpose Exception by arguing
27 that she has sufficiently alleged the calls were *not* made for an emergency purpose,
28 and therefore this Court must simply accept her allegations on that legal conclusion

-4-
REPLY IN SUPPORT OF MOTION TO DISMISS

as true. But the Court is not obligated to accept asserted legal conclusions as true. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (holding a complaint must contain "more than labels and conclusions") (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, the fully transcribed content of the voicemails Plaintiff received which she has included in her Complaint demonstrate on their face that Monarch's purpose behind the calls was directly related to the health and safety of a consumer.

While Plaintiff tries to argue that the Emergency Purpose Exception is an "affirmative defense" that Monarch bears the burden of proving, her Opposition directly acknowledges binding Ninth Circuit authority that establishes a complaint may be dismissed under Rule 12(b)(6) based on an affirmative defense where the complaint "admits all the ingredients of" the defense. *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018). And courts in this Circuit have granted Rule 12(b)(6) motions to dismiss on the Emergency Purpose Exception where the complaint contains a full replication of the allegedly violative message that demonstrates its emergency purpose. *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1261 (W.D. Wash. 2021) (rejecting argument that Emergency Purpose "affirmative defense" could not support dismissal under Rule 12(b)(6), where full content of message was transcribed in complaint). That is precisely the circumstance here.

The excerpted content of the voicemail messages alleged in the Complaint make clear that these calls were for the purpose of providing information to Monarch's enrollees regarding prior authorization requests from their physicians, which indisputably relates to the health and safety of those consumers. The Complaint clearly alleges three groups of calls: three received on March 11-12, 2024, intended for James Duran; three received on July 31-August 1, 2024, intended for James Duran; and one received on August 6, 2024, intended for Jonathan Duran. Compl. ¶¶ 12-18. The content of each call is fully excerpted in the Complaint. When the content of each group of calls is viewed together, it is plainly revealed that each

set of calls was purposed to "share important information . . . about a request your doctor made . . . about an approved authorization." *See, e.g.*, Compl. ¶¶ 16-18.

Plaintiff tries to dodge this by asking the Court to put on blinders and only look at the calls individually, ignoring the obvious patterned grouping of the calls, and to instead view the calls as having been made "over at least a five-month period," and noting that only "some of the prerecorded messages at issue" referenced "important information" or "information about an approved authorization." Opp. at 9. As an initial matter, it is untrue that only *some* of the calls contain that content – as the Court can see for itself, *every single* alleged call states either that it pertains to "important information" or "information about an approved authorization." Compl. ¶¶ 12-18. But more fundamentally, even the more lenient pleading standard afforded Plaintiff at this stage of the case does not require the Court to accept her implausible assertion that the individual calls were unrelated to one another in the face of the obvious temporal grouping of the calls within three distinct one or two-day periods, the direction of the grouped calls to two specific consumers, and the related content of those calls, all of which is facially apparent from the allegations pled in her Complaint. *See Poirier v. City of North Hollywood*, No. CV 11-2030-JVS (RNB), 2011 WL 6046920, at *4 (C.D. Cal. Sept. 20, 2011) (collecting Ninth Circuit decisions affirming district court is not required to accept "unreasonable inferences" or "unwarranted deductions of fact"); *Glair v. City of Los Angeles*, No. CV 09-6450-R (RNB), 2010 WL 1407357, at *7 (C.D. Cal. Feb. 17, 2010) (same).

The other characteristics of the calls Plaintiff highlights—that they requested a call back "at any time" and ended by saying "have a good day" —also fail to negate the fact that the calls directly related to the health and safety of a consumer, which is the relevant test for application of the Emergency Purpose Exception. *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1258 (W.D. Wash. 2021) (recognizing the term "emergency purpose" has been interpreted to encompass "calls made necessary in any situation affecting the health and safety of consumers"). Nothing in the statute

requires messages under the Exception to sound a certain way or end abruptly. Indeed, Plaintiffs' narrow view of what an emergency-purposed call must sound like is contrary to multiple cases where courts have held calls similar to the ones alleged here are exempt. *Id.* at 1256, 1261 (holding text message asking whether consumer was "60+, high-risk, self-quarantining, or [had] COVID-19 symptoms," informing that consumer could "[u]se curbside pickup or have [an] Rx mailed," and then directing consumer to "More info" available online was exempted under the Emergency Purpose Exception); *Dennis*, 2020 WL 618472, at *2, 7 (holding "Benefit Retention Calls" that asked whether the health plan member had received a recently-sent letter about renewing their health plan were exempted); *Lindenbaum*, 2018 WL 501307, at *2 (holding calls that sought to remind a consumer about prescriptions were "made for the 'health and safety of consumers'" and were "necessary," and thus exempted); *Roberts v. Medco Health Sols., Inc.*, 2016 WL 3997071, at *2 (holding calls and voicemail messages which included "Have a good day" sign-off, requests for a call back, or direction that the consumer "can always visit [defendant's] website" for "more information" were exempt). Those decisions are all consistent with the recognition that the "legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly." *In re Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 2736, 2738 (FCC 1992).

### C. Prior Authorization Calls Fall Squarely Within the Emergency Purpose Exception

Finally, Plaintiff makes the bold argument that calls made for the purpose of providing important information to a consumer regarding a physician's requested prior authorization for that consumer's medical treatment are not emergency purpose calls. That position is untenable.

To support her position, Plaintiff asks this Court to completely reject the interpretation of the Emergency Purpose Exception that multiple courts and the FCC have for years employed, which applies the exception to all calls "made necessary in

any situation affecting the health and safety of consumers," *Gabertan*, 523 F. Supp. 3d at 1258, and instead construe the exception narrowly to apply only where the "purpose is to address a sudden or unforeseen situation that calls for immediate action." Opp. at 13. Plaintiff cites no cases applying such a constricted, limited view of the Emergency Purpose Exception. While Plaintiff is correct that this Court is not *bound* by the FCC's statutory interpretation, that long-standing interpretation is still owed deference, *McLaughlin Chiropractic Assocs., Inc.*, 145 S. Ct. at 2015,[2] especially in light of the multiple courts that have also employed that interpretation, *see, e.g.*, *Gabertan*, 523 F. Supp. 3d at 1258; *Dennis*, 2020 WL 618472 at *5; *Lindenbaum*, 2018 WL 501307 at *2; *Roberts*, 2016 WL 3997071 at *3.

Lastly, Plaintiff attempts to muddy the waters by arguing that application of the Emergency Purpose Exception in this case in a manner consistent with prior precedent and the FCC's interpretation would somehow render the FCC's regulatory healthcare messages exemption—which creates a safe harbor for messages that meet very specific criteria—superfluous, Opp. at 15-16, and that Monarch must instead meet the strictures of the FCC's narrower exemption in order to fall within the TCPA's Emergency Purpose Exception. Opp. at 17. That same argument has been addressed and rejected by courts, however, which have noted the argument "would defy the plain language of the emergency purposes definition." *Roberts*, 2016 WL 3997071, at *3. Furthermore, the FCC itself—the agency that implemented the more specific healthcare message exception—has acknowledged that many healthcare calls may fall

---

[2] Ironically, in nearly the same breath that she dismisses the FCC's statutory interpretation, Plaintiff cites to an FCC declaratory ruling and order, Opp. at 15, in which the FCC declined a health benefits company's request for a declaratory ruling that certain "urgent" but <u>*admittedly*</u> "non-emergency" calls were exempt from the TCPA's prior consent requirements, providing as an example "calls to 'educate members about available services and benefits.'" *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 35 FCC Rcd. 6521, 6524 (2020). That declaratory ruling expressly addressed non-emergency calls unlike those at issue here, and the FCC simply declined to "create an 'urgent circumstances' exemption" for calls *not otherwise covered by* the already existing Emergency Purposes Exception. *Id.* The declaratory ruling therefore has no relevance here.

-8-
REPLY IN SUPPORT OF MOTION TO DISMISS

within both the emergency purpose exception and the healthcare exemption, and that parties may still freely rely on the more general Emergency Purpose Exception for healthcare related calls that do not perfectly fall within the specific criteria of the healthcare messages exemption. *Id.* (citing *ACA Int'l, et al., v. FCC*, No. 15-1211, 2016 WL 194146 (C.A.D.C.), Br. for Respondent at *71-72). Moreover, the idea that an administrative agency's creation of a narrower regulatory exemption would somehow negate application of Congress' broader exemption enshrined in the text of the statute itself is completely untenable, particularly in light of the Supreme Court's recent decisions in *Loper-Bright* and *McLaughlin* recognizing that agency interpretations of enacted statutes, though persuasive, are not binding.

Accordingly, for all of the foregoing reasons, Plaintiff fails to offer any argument that can avoid application of the TCPA's express Emergency Purpose Exception to the calls of this case. Plaintiff's claims must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully urges the Court to dismiss Plaintiff's Complaint with prejudice and grant all other such relief as the Court deems appropriate.

Dated: August 4, 2025          **TROUTMAN PEPPER LOCKE LLP**

*/s/ Jessamyn E. Vedro*
Chad Fuller
Jessamyn E. Vedro

*Attorneys for Defendant Monarch Healthcare, A Medical Group, Inc.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Monarch Healthcare, A Medical Group, Inc., certifies that this brief contains 2,939 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jessamyn E. Vedro*
Jessamyn E. Vedro

# CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, the foregoing ***DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT*** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated:	August 4, 2025	**TROUTMAN PEPPER LOCKE LLP**

*/s/ Jessamyn E. Vedro*
Chad Fuller
Jessamyn E. Vedro

*Attorneys for Defendant Monarch Healthcare, A Medical Group, Inc.*

-11-
REPLY IN SUPPORT OF MOTION TO DISMISS