JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 25-1161 JGB (SPx) | Date | October 24, 2025 |
|---|---|---|---|
| Title | *Liseth Aguirre v. Optum Health Plan of California, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 28); and (2) VACATING the October 27, 2025, Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Monarch Healthcare, A Medical Group, Inc.[1] ("Motion," Dkt. No. 28.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** Defendant's Motion. The October 27, 2025, hearing is **VACATED**.

## I. BACKGROUND

On May 12, 2025, Plaintiff Liseth Aguirre filed a complaint against Defendant on behalf of herself and a putative class. ("Complaint," Dkt. No. 1.) Plaintiff amended her Complaint, filing a First Amended Complaint on July 17, 2025.[2] ("FAC," Dkt. No. 25.) The FAC alleges one cause of action: a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). (See FAC.) On July 21, 2025, Defendant filed this Motion. (See Motion.)

---

[1] While Optum Health Plan of California was initially party to this Motion, Plaintiff has since voluntarily dismissed Defendant Optum Health Plan of California. (See Dkt. No. 29.) As such, Monarch Healthcare is referred to individually as "Monarch" or "Defendant."

[2] Defendant contends that the FAC was improperly filed pursuant to Fed. R. Civ. P. 15, Local Rule 15, and this Court's Standing Order. While the Court agrees and **ADMONISHES** Plaintiff against future improper filings, in the interest of judicial economy and because the Motion substantively addresses the FAC, the Court accepts the FAC as the operative complaint.

Plaintiff filed her Opposition on July 28, 2025. ("Opposition," Dkt. No. 29.) Defendant replied on August 4, 2025. ("Reply," Dkt. No. 31.)

## II.     FACTUAL ALLEGATONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Plaintiff Liseth Aguirre is a resident of San Bernardino County, California. (FAC ¶ 4.) Defendant is a California corporation with its principal place of business in Los Angeles County, California. (Id. ¶ 6.) Plaintiff was, since before March 2024 and during the time of the events underlying this case, the subscriber to, and sole regular user of, the telephone number 951-XXX-3726. (Id. ¶ 8.) As early as March 2024, Defendant began calling—or causing calls to be placed—to that telephone number. (Id. ¶ 9.) Those calls were directed to that number for the purpose of reaching someone other than Plaintiff. (Id. ¶ 10.) Defendant used an artificial or pre-recorded voice in connection with the calls it placed, or caused to be placed to that phone number. (Id. ¶ 11.)

Defendant placed, or caused to be placed, the following phone calls and left the following messages, which have been transcribed:

> On March 11, 2024: Hello, this is Optum calling for James Duran. We were calling to share information about an approved authorization. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

> On March 11, 2024: Hello, this is Optum calling for James Duran. We were trying to reach you to share some important information. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

> On March 12, 2024: Hello, this is Optum calling for James Duran. We were trying to reach you again to share some important information about a request your doctor made. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

> On July 31, 2024: Hello, this is Optum calling for James Duran. We were calling to share information about an approved authorization. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the

number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

On July 31, 2024: Hello, this is Optum calling for James Duran. We were trying to reach you to share some important information. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

On August 1, 2024: Hello, this is Optum calling for James Duran. We were trying to reach you again to share some important information about a request your doctor made. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

On August 6, 2024: Hello, this is Optum calling for Jonathan Duran. We were calling to share information about an approved authorization. Please call us back any time twenty-four hours a day, seven days a week toll free at 1-844-306-3237. Again, the number is 1-844-306-3237. TTY users should call 800-735-2922. Thank you and have a good day. Goodbye.

(Id. ¶¶ 12-18.) Plaintiff listened to each of these calls, which were meant for James Duran or Jonathan Duran. (Id. ¶¶ 21-22.) The calls were placed by Cotiviti, Inc. at Defendant's direction. (Id. ¶ 23.)

### III.   LEGAL STANDARD

**A.  Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B. Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.   DISCUSSION

Defendant argues that the phone calls at issue were placed for emergency purposes, and are therefore not subject to the TCPA. (Mot. at 5-6.) Plaintiff argues that the calls do not, based on the contents of the FAC, qualify for an emergency purpose exception, especially where the information in the call was not intended for Plaintiff herself.

**A. Emergency Exception**

The TCPA's prohibition on automated calls does not cover "a call made for emergency purposes," which the Federal Communications Commission ("FCC") interprets as "calls made necessary in any situation affecting the health and safety of consumers." 47 U.S.C.A. § 227(b)(1)(A); 47 C.F.R. § 64.1200(f)(4). Plaintiff cites to a 2020 FCC decision regarding calls arising out of the COVID-19 pandemic for the principle that "[t]he 'emergency purposes' exception is intended for 'instances [that] pose significant risks to public health and safety, and [where] the use of prerecorded message calls could speed the dissemination of information

regarding . . . potentially hazardous conditions to the public.'" In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA, 35 FCC Rcd. 2840, 2841 (2020). In Plaintiff's view, this 2020 opinion requires calls to address "significant risks to public health and safety" in order to qualify. (Opp'n at 4.) Yet, looking to the FCC's underlying citation in that case, a 1992 decision, the 2020 ruling appears to overstate the agency's prior position. Instead, in that 1992 case, the FCC merely stated the following in the context of finding the emergency exception to cover public utilities:

> Service outages and interruptions in the supply of water, gas or electricity could in many instances pose significant risks to public health and safety, and the use of prerecorded message calls could speed the dissemination of information regarding service interruptions or other potentially hazardous conditions to the public.

7 FCC Rcd. 8752, 8778 (1992). This statement is hardly a proclamation limiting the emergency exception's scope to scenarios posing "significant risks to public health and safety" as suggested by the FCC in 2020 and as relied upon by Plaintiff. The FCC in 1992 was merely expressing a situation plainly covered by the emergency exception; its promulgated regulation contains no such qualification and is far more expansive.

This Court must "interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 152 (2025). The promulgated FCC interpretation of the emergency exception covers "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). This is based on the statute's exception for "emergency purposes." 47 U.S.C.A. § 227(b)(1)(A). Under the very definition of "emergency" Plaintiff provides, "pressing necessity" is included. (See Opp'n at 14.) The Court concurs with the FCC's promulgated interpretation given this definition of emergency. That interpretation has expansive language covering the calls at issue, which address a topic of pressing necessity.

These calls, which by their own terms addressed "approved authorization" and "important information about a request your doctor made" in a health insurance context, plainly present a "situation affecting the health . . . of [a] consumer[]." 47 C.F.R. § 64.1200(f)(4). In the same way that information about prescriptions has been found to be covered by the emergency exception because prescriptions relate to recipients' health, receiving information about authorization from a health insurance company emergently relates to an individual's ability to receive medical care under the FCC's promulgated regulation.[3] See Roberts v. Medco Health

---

[3] Plaintiff complains that Defendant "interjects untested factual assertions into its briefing," including the fact that Defendant is a healthcare-related organization within the Optum network. (Opp'n at 11.) Yet the Court does not rely on such assertions in making its decision. For an Optum customer, it would be apparent from calls referring to Optum (which all did) that the message is healthcare- and health insurance-related. While Plaintiff was not the (continued . . .)

Sols., Inc., 2016 WL 3997071, at *3 (E.D. Mo. July 26, 2016) ("in many instances a patient's ability to timely receive a prescribed medicine is critical in preventing a major health emergency"); Lindenbaum v. CVS Health Corp., No. 1:17-CV-1863, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018) ("In most cases, information about where, when, and how to refill a prescription concerns the health and safety of consumers, who may be reliant on their medication.).

      Plaintiff makes much of the fact that the calls directed the recipient to call back "any time," and sees that as demonstrating non-exigency. (Opp'n at 8.) But a better reading of such language is that the call is important enough that the caller wants to ensure the recipient is able to call back at any time they are available to receive the information, even if outside of normal business hours. Similarly, the clusters of calls suggest repeated attempts to communicate information to the recipient related to the subject of the messages, which further demonstrates exigency. (Id. at 9; Reply at 6.) Finally, contracting with a third party to make such calls hardly undermines their exigency—a healthcare provider may need to contact many individuals with emergent information related to their coverage and treatment, and hiring a third party to do so could aid in ensuring timely notification, and ample bandwidth to receive call-backs, for every patient. (Opp'n at 10.) All of these evaluations are made solely based on the allegations in Plaintiff's FAC.[4]

      This case is distinguishable from CGB Issues Declaratory Ruling & Order in Anthem, Inc., an FCC decision cited by Plaintiff. 35 FCC Rcd. 6521, 6524 (2020). There, Anthem requested an "urgent circumstances" exception to cover calls to "educate members about available services and benefits." Id. The FCC found no basis for an "urgent circumstances" exception as opposed to the existing "emergency purpose" exception, and held that the calls at issue in that case were "not likely to be so time-sensitive and critical to justify bypassing consumer consent." Id. Here, however, the calls fall within the emergency purpose exception, and Defendant is not claiming they would only be covered by an urgent purpose exception. Further, the calls here by their own terms are about authorization approval for health insurance, which is "time-sensitive and critical" in the same manner as prescription calls found by other courts to fall within the emergency purpose exception. The calls in this case are not merely to "educate members about available services and benefits," which is a comparatively non-exigent purpose. Id.

      Defendant's calls, based only on the information pled in Plaintiff's FAC, substantively fall within the emergency purpose exception.

---

intended recipient of the calls, which is obvious as they were addressed to individuals with other names, the *intended* recipients would be able to identify the health-related, and therefore exigent, nature of the calls.

[4] Plaintiff argues that the emergency exception is an affirmative defense, placing the burden on Defendant to prove. (Opp'n at 11-12.) While the burden may be on Defendant to demonstrate the exception's applicability, where the facts provided by Plaintiff are sufficient to do so, there is no need for Defendant to provide additional facts.

**B. Wrong-Number Calls**

Plaintiff's FAC makes clear—and Defendant does not dispute—that the calls in this case were not for Plaintiff. (FAC ¶¶ 26-30.) This raises the issue of whether the emergency exception does not apply because, even though the calls substantively fit under the exception, that emergency purpose did not apply to the actual recipient, Plaintiff. Defendant contends that the calls fall under the exception because it is the caller's purpose that matters, not the recipient's circumstances. (Mot. at 10.) Plaintiff, on the other hand, argues that it is the recipient's relation to the calls' content that matters, not the caller's purpose. (Opp'n at 4.)

In a 2016 FCC ruling, the agency wrote that emergency purpose "calls must be about a *bona fide* emergency that is relevant to the called party." In re Blackboard, Inc. Petition for Expedited Declaratory Ruling, 31 FCC Rcd. 9054, 9063 (2016) (emphasis added). Plaintiff reads this as conclusive on the issue of Defendant's culpability, given that she was not the intended recipient. But that same FCC ruling also states:

> Even though calls made for an emergency purpose can be made without the prior express consent of the called party, we encourage educational organizations to regularly update their emergency calling lists to ensure that emergency-purpose calls do in fact reach the parent or guardian of each affected student and are not received by consumers with no connection to the school.

In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 31 F.C.C. Rcd. 9054 (2016). Encouraging, but not mandating, callers to verify numbers implies that the FCC acknowledges that phone numbers can change, and that call recipients might occasionally differ from the person who originally had the phone number at issue. Further, as discussed above, the Court is under no obligation to defer to the FCC's ruling, so long as the agency's positions are given due respect. See McLaughlin, 606 U.S. at 152.

The plain language of the FCC's promulgated explanation of the emergency purpose exception supports a broader reading. It refers to "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200. The regulation does not limit the exception to health-related situations with direct application to the recipient, it applies to consumers in any situation. The Court finds the broad language in the promulgated regulation to demand more respect than an advisory decision. Such language allows the exception to carry its full force in situations such as this where callers would otherwise be subject to liability based on wrong-number dials in their efforts to communicate important, emergent health-related information to subscribers.

While the Court would not go so far as to say the caller's purpose is the sole consideration at play, in this case the fact that the calls substantively satisfy the exception is sufficient, alongside a further key consideration: Plaintiff does not allege that she ever made an effort to communicate to Defendant that she was not the intended caller, or that Defendant should stop contacting her. (See FAC.)

Several other courts have found that wrong-number calls do not defeat the emergency purpose exception.  See Dennis v. Amerigroup Washington, Inc., No. 3:19-CV-05165-RBL, 2020 WL 618472, at *7 (W.D. Wash. Feb. 10, 2020); Roberts, 2016 WL 3997071, at *3 (E.D. Mo. July 26, 2016)[5]; Lindenbaum, 2018 WL 501307, at *2.  The Ninth Circuit's language in Duguid v. Facebook, Inc. does not persuade this Court otherwise.  Duguid v. Facebook, Inc., 926 F.3d 1146 (9th Cir. 2019), rev'd and remanded, 592 U.S. 395 (2021).  In that case, a plaintiff sued Facebook for texting him messages about logins from unfamiliar devices, yet the plaintiff did not have a Facebook account.  Id. at 1152.  Based on the fact that he alleged he did not have a Facebook account *and* had repeatedly tried to inform Facebook to stop the texts, the Ninth Circuit found the messages to fall outside the FCC's "broad construction" of the emergency exception.  Id.  Having been reversed, even on other grounds, and presenting a different set of circumstances, that case does not direct the outcome here.

Because the emergency purpose exception applies to the calls alleged in Plaintiff's FAC, even though Plaintiff was not the intended recipient, the FAC fails to state a claim upon which relief can be granted.  As such, the Motion is **GRANTED** and the FAC is **DISMISSED WITHOUT LEAVE TO AMEND**.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion.  The October 27, 2025, hearing is **VACATED**.

**IT IS SO ORDERED.**

---

[5] Plaintiff finds Defendant's reliance on Dennis and Roberts "misplaced" because those decisions were rendered at the summary judgment stage, but does not explain why that matters, given that the Court has found Plaintiff's FAC as pled provides sufficient information to identify Defendant's calls as falling within the emergency exception.  (See Opp'n at 6 fn. 3.)